C. L. LANDIE and wife, MARGARET E. LANDIE, v. THE WEST-ERN UNION TELEGRAPH COMPANY.

(Decided April 25. 1899).

*Negligence—Mental Anguish—Undisclosed Principal.*

1. A telegraph company, as a common carrier, in the transmission and delivery of messages, owes a public duty which should be performed with reasonable care and diligence.

2. The plaintiff is not debarred from a recovery of damages from negligence in the delivery of a telegram because her name was not signed to the telegram, and the defendant company was not then notified that it was sent by her direction or for her benefit.

CIVIL ACTION to recover damages for mental anguish suffered by *feme* plaintiff on account of alleged negligence of defendant in the delivery of a telegram—tried before *Coble, J.,* at March Term, 1899, of MECKLENBURG Superior Court.

The plaintiffs lived at Charlotte. On May 24, 1897, early in the morning their child died. That same morning C. L. Landie went to telegraph office of the defendant to see whether a message could be got through to Mr. Huntly, a relative of his wife, who lived at Chesterfield, S. C., and was informed that it could. He then wrote, paid for and left to be sent, the following message:

"T. L. Huntley, Chesterfield, S. C.

"Frank dead; meet depot at Wadesboro, 8 a. m.; bury him in Chesterfield. Grave 3 feet.

"C. L. LANDIE."·

He told the agent it was a very important matter; that his child was dead, and he wanted to be sure there was no misconnection. About noon that day C. L. Landie returned to the office and inquired if the message was delivered, and was informed that it had been. He did not remember that his wife's name was mentioned to the agent.

After getting the assurance from the company that his message had been delivered he made arrangements to have his dead child and family to go down to Wadesboro on the morning train of 25th of May, 1897. They went, his wife and three children, aged 2, 3, and 15 years—he himself did not go.

The *feme* plaintiff was placed upon the stand. Her counsel proposed to show by this witness: That on the morning of 25th May, 1897, at 5 o'clock a. m., she started out from the depot at Charlotte with the body of her dead child, for the purpose of conveying it to Wadesboro, and thus across the country to Chesterfield, S. C., for interment; that she reached Wadesboro about 7 o'clock a. m., on May 25th, expecting.to be met there by T. L. Huntley; that she had to wait alone at Wadesboro for two or three hours; that she

124—34

had to hire a conveyance and travel through the country with the driver and the body of her dead child; that by waiting alone at the depot at Wadesboro, and on account of the trip across the country, she suffered great mental anguish; that her husband and herself had made the arrangement that he was to send the telegram for her benefit, and that she acted on the information, which he gave her in reference to the telegram. Upon objection of defendant's counsel, the proposed evidence was excluded. Plaintiff excepted. It was admitted in the Answer that the message was not delivered until the morning of 25th May.

The defendant offered no evidence.

The issues were:

1. Was the *feme* plaintiff injured by the negligence of the defendant?

2. If so, what damages has she sustained?

Upon the intimation of the Court, that it would instruct the jury that in no aspect of the testimony could they answer the first issue in the affirmative, the plaintiffs submit to a nonsuit, and appeal.

*Messrs. Osborne, Maxwell & Keerans,* for plaintiff (appellant).
*Messrs. Jones & Tillett,* for defendant.

DOUGLAS, J. This was a civil action by the *feme* plaintiff to recover damages for mental anguish suffered by her, caused by the assurance on the part of the defendant that a telegraphic message sent for her benefit, had been delivered, when in fact it had not been delivered; and also by the negligent failure of the defendant to promptly deliver said telegram.

The infant child of the plaintiffs had died early on the

LANDIE *v.* TELEGRAPH CO.

morning of May 24, 1897, and about 10 o'clock on the same day, C. L. Landie, husband of the *feme* plaintiff, by an agreement with her and for her benefit, delivered the message hereinafter set forth to the defendant company for transmission to T. L. Huntley, a kinsman of the *feme* plaintiff. The said Landie paid the defendant its charges for transmission to Chesterfield, and at the time of the delivery notified the company that it was a very important matter, relating to the burial of the child; the said company assured Landie that the same would be forwarded immediately, and in order to be certain of its delivery, the said Landie went back to the office of the company about 12 o'clock on the same day, and was assured by it that the message had been delivered to its destination; that he thereupon informed his wife, the *feme* plaintiff, and she acting and relying upon said representations of the defendant, prepared the body of her infant and started with it to Wadesboro on the morning of May 25th, reaching that point about 7 o'clock a. m., expecting to be met there in accordance with said telegram; that the said message was not delivered on May 24th, as assured by the company, but not until the following day, too late for any one to meet the *feme* plaintiff; that on account of the non-delivery, she had to remain for several hours at the depot in Wadesboro, alone with the dead body of her infant, and then make arrangements to carry the same across the country to Chesterfield, by which she suffered great mental anguish, as she alleges.

The *feme* plaintiff, in order to maintain her action, proposed to show that the message was sent by an agreement with and for her benefit, and that she was the undisclosed principal, which the Court refused to permit.

To this ruling the plaintiff excepted, submitted to a nonsuit, and appealed.

The telegram was as follows:

Landie *v.* Telegraph Co.

"Charlotte, N. C., May 24, 1897.

"To T. L. Huntley, Chesterfield, S. C.

"Frank dead; meet depot Wadesboro, 8 a. m.   Bury him in Chesterfield.   Grave three feet.        C. L. Landie."

The only point presented to this Court by the distinguished counsel, who frankly admitted that it was covered by the case of *Cashion v. Telegraph Co.,* 123 N. C., 267, was that of an undisclosed principal.   It is due to them to say that the Cashion case had not been decided when the appeal was taken.

We see no reason to reverse our ruling in that case, and therefore hold that the plaintiff is not debarred from a recovery because her name was not signed to the telegram, and the defendant was not then notified that it was sent by her direction or for her benefit.   The facts as presented to us in this appeal are stronger than those in the Cashion case, and therefore bring this case more clearly within the rule. Even if the male plaintiff had not notified the defendant of the urgency of the message, its importance clearly appeared upon its face; and the negligence of the defendant in failing to deliver it was aggravated by its negligent assurance that it had been delivered.   We have decided this question upon what we believe to be true legal principles; but let us gauge it for a moment by the rule of common sense.   The male plaintiff left his wife alone at home with the dead body of their child, and went to the telegraph office to send a message to a relative to prepare the grave and meet the body. Suppose we had found him doing what the defendant says he should have done: cooly and deliberately informing the defendant that he was the agent of one M. E. Landie; that he sent the telegram by her direction and for her benefit; and that "she 'had then in contemplation' heavy damages for great mental anguish which would probably result from a failure to promptly deliver the telegram.

Would it not have tended to raise in the minds of the jury a suspicion of speculation? While it might have come within the rule of *Hadley v. Baxendale,* would it be within the ordinary rule of human conduct? Would we expect such care and deliberation on the part of a father or a mother under such circumstances, and would it be reasonable in us to require it? The telegraph is not intended solely for lawyers, nor for those skilled in business or experienced in litigation. It is intended for the general public, and must meet their reasonable convenience. Moreover, the defendant as a common carrier, owed to the plaintiff a public duty which it should have performed with reasonable care and diligence. It can not be relieved from liability for the proximate results of its own negligence if it existed, by unreasonable regulations or technical objections.

For error in the intimation of His Honor, the judgment of non-suit must be set aside, and a new trial ordered.

New trial.