McCollum *v.* Western Union Telegraph Co.

(*Knoxville*, September Term, 1943.)

Opinion filed November 20, 1943.

R. W. KEMMER, of Chattanooga, for plaintiff in error.

SPURLOCK & SPEARS, of Chattanooga, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a suit for damages for failure promptly to transmit a money order telegram for $450 from Chattanooga, Tennessee, to Winchester, Virginia. The suit was instituted before a justice of the peace who rendered

judgment in favor of plaintiff for $275. On appeal the circuit court reduced this judgment to one for $3.15, which sum had been tendered by the defendant. On appeal to the Court of Appeals that court held plaintiff entitled to some other small items of damage on the record before it, together with attorney's fee, reversed the judgment below and remanded with leave to plaintiff to amend his pleadings and more fully develop his case.

On December 13, 1941, the plaintiff turned over to a bonded messenger of defendant the sum of $450 to be sent to an employee of plaintiff at Winchester, Virginia. Plaintiff also paid $3 to the messenger, the charge for transmission of the money. This transaction took place about 3:30 Saturday afternoon. According to the testimony, delivery of the money should have been made at Winchester, Virginia, within one to two hours.

Plaintiff's business was that of a fruit dealer. It was his habit to send a truck to the apple-growing section of Virginia and his driver would there select and contract for such apples as were desired. The driver would notify the plaintiff and the latter would thereupon wire the driver the amount that had been agreed upon as the price of the apples.

On Saturday, December 13, 1941, plaintiff's driver advised that he had secured a truck load of apples and the price of same, and requested that the money be sent. In reply to this advice the plaintiff undertook to transmit the sum of $450 to his employee in the manner above stated.

The apples were loaded in the plaintiff's truck and the driver was ready to start during this afternoon. The money had not been received at Winchester, Virginia, up to 8 p. m. on the night of the 13th and the employee called plaintiff over the telephone about 8 p. m. Plaintiff said

he thought the money would certainly reach his agent during the evening and did nothing further about the matter until Sunday morning. At that time he had another communication from his agent and plaintiff took up the matter of the delay with the Telegraph Company at Chattanooga. They promised to investigate and later on Sunday informed the plaintiff that the money had been sent to Winchester, Tennessee, by mistake and suggested that he (plaintiff) call up the Winchester, Tennessee, office to have the money transferred. Plaintiff said he attempted to do this but found the Winchester, Tennessee, office closed on Sunday. He made further complaint to the Telegraph Company in Chattanooga on Monday morning and, as we understand the proof, got the money to Winchester, Virginia, and the truck started from that point about noon on Monday, December 15, 1941.

Plaintiff's proof was to the effect that the weather in Virginia was freezing and it was necessary for his driver to keep the truck that had been loaded with the apples in a heated garage at that point on the night of Saturday the 13th and the night of Sunday the 14th. That by reason of this the apples sweated and became deteriorated. By reason of this deterioration plaintiff had to sell the apples on the Chattanooga market at 50c a bushel less than the amount at which he had previously contracted for their sale. It is for this damage and for the loss of use of his truck for two days that he sues.

In the warrant issued by the justice of the peace the plaintiff avers a contract with defendant for a named consideration to transmit this sum of money, as heretofore set out, but the terms of this contract do not further appear in the record.

A stipulation of fact was made by counsel for the parties in which it was agreed that the messenger of defendant "would testify that he did not know for what purpose the money order was being sent nor did the Company know for which the money was being sent at the time it was forwarded from Chattanooga." There is testimony of plaintiff that he had on several previous occasions transmitted money by wire to his agent in Virginia from defendant's office at Chattanooga.

■ ■ Prior to the Federal Communications Act of 1934, 47 U. S. C. A., sec. 151 et seq., in Tennessee, one aggrieved by failure of a telegraph company promptly to transmit a message might sue in tort and recover all natural damages or approximate damages flowing from such failure. This was by reason of Sections 3101 and 3102 of the Code which made it the duty of a telegraph company to transmit without unreasonable delay any message entrusted to it and providing that a telegraph company wilfully violating such duty should be liable to the party aggrieved. In such a suit in tort it is not material that the telegraph company should have notice of the purpose of the message and of the nature of the transaction to which it relates. *Gray* v. *Western Union Telegraph Co.*, 108 Tenn., 39, 64 S. W. 1063, 56 L. R. A., 301, 91 Am. St. Rep., 706; *Western Union Telegraph Co.* v. *Green,* 153 Tenn., 59, 281 S. W. 778, 48 A. L. R., 301, on petition to rehear, 153 Tenn., 522, 284 S. W., 898— these cases reviewing our earlier decisions.

■ The Court of Appeals held herein that the Federal Communications Act covered the whole subject of interstate communication by telegraph and superseded Sections 3101 and 3102 of the Tennessee Code in so far as such communications were concerned. This ruling is not challenged by petition for *certiorari* and indeed is

acquiesced in by the plaintiff and is therefore accepted by us in disposing of this case.

Except for the Tennessee statute this Court in *Gray* v. *Western Union Telegraph Co.*, and *Western Union Telegraph Co.* v. *Green*, as well as in earlier decisions referred to in those two, appears to recognize that suits like this one would be treated as suits on the contract and only such damages as were within the contemplation of the parties at the time of the making of the contract would be recoverable for a breach thereof. The Federal rule is clearly to that effect. *Primrose* v. *Western Union Telegraph Co.*, 154 U. S., 1, 14 S. Ct., 1098, 38 L. Ed., 883, where *Hadley* v. *Baxendale, 9* Exch., 345, is discussed and applied. The Federal rule controls. *Western Union Telegraph Co.* v. *Schade,* 137 Tenn., 214, 192 S. W., 924.

Defendant, according to the stipulation of the proof, was without knowledge of the purpose for which this money was entrusted to it for transmission. This is true unless such knowledge could be imputed from the bare fact that the plaintiff had previously transmitted money by wire to his agent in Virginia, which we do not think is sufficient to have put the defendant on notice. Therefore the special damages herein sought cannot be allowed. Damages for delay or default in the transmission of money are under the general rule confined to the recovery of the money and interest during the time the money was held by the telegraph company. *Western Union Telegraph Co.* v. *McCaul,* 115 Tenn., 99, 90 S. W., 856, and numerous cases collected in a note in 80 A. L. R. 300.

The Court of Appeals expressed the opinion that defendant's Chattanooga office probably learned the nature of the plaintiff's business in Virginia and the situ-

ation with respect to the apples he had bought there when he communicated with them on Sunday morning, December 14. On the remand that court said that the plaintiff should be given an opportunity to prove such notice, to amend his pleading, if necessary, and to recover such damage as was caused to his fruit by the delay during Sunday, Sunday night and part of Monday until the fruit was released. Apparently this is an equitable solution of the matter but we do not think it permissible in view of the stipulation of counsel made below. It was therein agreed:

"The plaintiff claims he is entitled to recover full damages, i. e., the sum of $275.00 and costs as awarded by the Justice of the Peace, and the defendant claims it is only liable for the sum of $3.15, being interest on the sum sought to be forwarded, plus the costs accrued up to the time of the tender and that the sum of $3.15/100 covering interest and costs has been tendered, and it is stipulated that if the Court finds in favor of the contention of the plaintiff that the judgment in the Justice of the Peace is correct but on the other hand if the Court finds in favor of the contention of the defendant, the plaintiff can recover nothing save the money tendered and paid into Court and the judgment for costs accrued since the tender will be adjudged against the plaintiff."

Plaintiff was represented by experienced counsel and if plaintiff had been able to prove the things suggested by the Court of Appeals counsel would have entered into no such stipulation as the foregoing. At any rate plaintiff is bound by the stipulation and the recovery must be limited to $3.15.

 An attorney's fee is not allowable under the Federal Communications Act, for this suit is not one for violation of any of the provisions of that Act but is a

suit to recover damages which, if allowable, would be recoverable under general law, not under the statute. *Atlantic Coast Line R. Co.* v. *Riverside Mills,* 219 U. S., 186, 31 S. Ct., 164, 55 L. Ed., 167, 31 L. R. A. (N. S.), 7. If the suit were based on a violation of the Federal statute it would not be cognizable in a State court. *Galveston, etc., R. Co.* v. *Wallace,* 223 U. S., 481, 32 S. Ct., 205, 56 L. Ed., 516, where the distinction between suits based on a violation of the statute and suits under general law is brought out.

The judgment of the Court of Appeals will be reversed and that of the circuit court affirmed. Costs below will be paid as taxed by the circuit court, other costs will be paid by the plaintiff.